## BOB PAYNE v. THE STATE.

### No. 4835. Decided April 17, 1918.

**1.—Burglary—Accomplice—Contradicting Own Witness—Surprise.**

Where, upon trial of burglary, defendant set up an alibi and introduced evidence that he was at another place than that at which the offense was committed, and the State thereupon introduced defendant's brother-in-law to contradict defendant's testimony as to the alibi and the testimony of such brother-in-law was neither affirmatively nor negatively injurious to the State's case, and the matter at issue was not called to the attention of said State's witness at the time he testified, it was error to permit the State to introduce a certain written statement which the said State's witness had made in the office of the district attorney on the ground that the State was surprised at the testimony of its witness.

**2.—Same—Charge of Court—Accomplice Testimony—Certifying Charge.**

Where the court's charge on accomplice testimony was not certified by the trial court and was excepted to on that ground, the exception should have been sustained, as the statute is mandatory in this respect. Following Alberson v. State, 54 Texas Crim. Rep., 8.

Appeal from the District Court of Hale. Tried below before the Hon. R. C. Joiner.

Appeal from a conviction of burglary; penalty, two years imprisonment in the penitentiary.

*W. W. Kirk,* for appellant.—On question of corroboration: Edgar v. State, 59 Texas Crim. Rep., 491, 129 S. W. Rep., 141; Chandler v. State, 60 Texas Crim. Rep., 329, 131 S. W. Rep., 598.

On question of impeaching own witness: Johnson v. State, 11 S. W. Rep., 106; Thompson v. State, 22 id., 50; Williford v. State, 37 id., 761; Holland v. State, 60 Texas Crim. Rep., 117, 131 S. W. Rep., 563; Renn v. State, 64 Texas Crim. Rep., 639, 143 S. W. Rep., 167; Hollingsworth v. State, 78 Texas Crim. Rep., 489, 182 S. W. Rep., 465; Roberts v. State, 70 Texas Crim. Rep., 297, 156 S. W. Rep., 651.

On question of giving charge without verification: McLain v. State, 17 S. W. Rep., 1092; Jones v. State, 85 id., 1075; Alderson v. State,

54 Texas Crim. Rep., 8, 111 S. W. Rep., 412; Polk v. State, 60 Texas Crim. Rep., 150, 131 S. W. Rep., 580; Castillo v. State, 75 Texas Crim. Rep., 643, 172 S. W. Rep., 788; Sessions v. State, 197 S. W. Rep., 718.

*E. B. Hendricks,* Assistant Attorney General, for the State.—On question of impeaching own witness: Somerville v. State, 6 Texas Crim. App., 433; Tyler v. State, 13 id., 205; Kirk v. State, 35 Texas Crim. Rep., 224; Brown v. State, 55 Texas Crim. Rep., 9; Thompson v. State, 77 Texas Crim. Rep., 140, 177 S. W. Rep., 503.

On question of surprise: White v. State, 62 S. W. Rep., 749; Jeter v. State, 52 Texas Crim. Rep., 212; Baum v. State, 60 id., 638; Layton v. State, 61 id., 507.

DAVIDSON, PRESIDING JUDGE.—Appellant was convicted of burglary, his punishment being assessed at two years confinement in the penitentiary.

The testimony of C. I. Williamson makes himself an accomplice. Substantially he testified that he and appellant went to the place of one Lovvorn and burglarized his house and took meat and feedstuff.

· A bill of exceptions recites that after Williamson had testified that he and appellant about 12 or 1 o'clock on April 13th committed this burglary of Lovvorn's barn; that among other things they took two hams and two middlings of meat from the house; that on the same night before they burglarized Lovvorn's barn that the two, in company with George Morley, went out in the country about five or six miles to the Clark place in a wagon; that he said nothing about committing this burglary until after his barn had been searched by the officers on or about April 17th or 18th, in which there was some feedstuff he had stolen, and after he had testified that he did not know whether he had been indicted by the grand jury for this burglary and other burglaries and thefts; and after Williamson had testified on cross-examination that he had purchased a gray mare prior to the alleged burglary from the defendant, partly for cash and partly on credit, and that he had paid defendant for the mare; and after Lovvorn had testified on direct examination that the one ham and middling of meat found at the defendant's house the week after the alleged burglary was part of the same meat that was taken from his barn on the night of the alleged burglary; "and after the State had rested; and the defendant, his defense being that he was not with said C. I. Williamson at the time of the alleged burglary, but was at a dance at Hal Preston's, and his explanation of how the meat found at his house the week following the alleged burglary came there, being that he purchased it on the morning following the alleged burglary for $5.75 from said C. I. Williamson, which amount he allowed said Williamson a credit on a debt said Williamson owed the defendant for a gray mare the defendant had sold said Williamson prior to said burglary; and defendant's theory of why said C. I. Williamson had implicated the defendant in said burglary being that it was to pro-

cure his immunity from prosecution, and after all of which, and after the defendant had rested, the State, in sur-rebuttal, introduced said George Morley, who testified on examination in chief that he was about sixteen years old, a brother-in-law to the defendant; he remembered the occasion when some meat was supposed to have been stolen from the barn of W. J. Lovvorn on Friday night in April last; that he, C. I. Williamson, and the defendant did not go out into the country to the Clark place on that night; that they did go out to the Clark place one night in April, about dark, and returned about 9 or 10 o'clock, but did not remember whether or not it was on a Friday night; that he was with the defendant that Friday night at a dance; that he made a written statement in the district attorney's office the week after the meat was supposed to have been stolen from said Lovvorn's barn, and at the time of making such statement in the district attorney's office the defendant was not present and that at the time he, the defendant and said Williamson went out in the country to the Clark place was the time to which he referred in his statement made in the district attorney's office, and after which the State, after having said statement made in the disrict attorney's office identified, introduced in evidence, and same was read to the jury, the following statement from the statement made by the witness Morley in the district attorney's office in the absence of the defendant, towit: "Friday night Charles Williamson, Bob Payne and myself went out in the country southwest. We went to a place where Mr. Clark had some feedstuff."

Quite a number of objections were urged to the introduction of this testimony. The court admitted it with this explanation: "The witness being a brother-in-law of defendant was a very unwilling witness, and the witness having made a sworn statement to the district attorney, the State had a right to believe that when put on the stand that he would testify as shown in said statement. But after witness, for the first time, claimed that on the night of the burglary that he was with the defendant at a dance, and at no time before testifying on the stand had made any such claim and shown himself very antagonistic to the State, said testimony was introduced." We are of opinion that the ruling of the court was not correct. Whether they went to the Clark place or not would be immaterial, and inasmuch as the witness was not questioned by the district attorney, in the statement in his office, with reference to this particular transaction, and not being called to the witness' attention at the time as to whether it was this or some other particular occasion so as to call his attention to it, he could not be impeached on the ground that the district attorney was surprised at the testimony. This testimony was not either affirmatively or negatively injurious to the State's case, and further, the matter not having been called to his attention at the time he is not subject to be impeached under any aspect of the law. The authorities seem to be very clear on this proposition. The court was in

error in admitting this testimony. This same matter is presented by two bills of exception.

Exceptions were reserved to the charge of the court on several grounds. The court failed to charge the jury with reference to accomplice testimony. An exception was reserved to this failure, and the court did not of his own volition cover this defect in the charge. There is a charge in the record but not approved nor certified by the trial court, charging the jury with reference to the law governing accomplice testimony. A bill of exceptions was reserved to this charge because not certified by the judge. This matter is shown in two or three ways, but without deciding the matter further we would say upon the trial of cases where charges are given the court should certify them. The statute is mandatory in this respect, and has been so held by this court. Alberson v. State, 54 Texas Crim. Rep., 8.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

PRENDERGAST, JUDGE, absent.